NOT DESIGNATED FOR PUBLICATION

No. 116,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARVIN B. DAVIS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 21, 2018. Affirmed.

*Angela M. Davidson*, of Wyatt & Davidson, LLC, of Salina, for appellant, and *Marvin B. Davis Jr.*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL, J., and STUTZMAN, S.J.

PER CURIAM:  Because we have found no abuse of discretion by the district court when it denied Marvin B. Davis Jr.'s pro se pretrial motion to declare the Kansas Offender Registration Act unconstitutional, we affirm.

*The case history reveals that Davis had counsel.*

As a result of plea negotiations, Davis agreed to enter a no contest plea to an amended charge of attempted offender registration violation. In exchange for the plea, the State agreed to dismiss a remaining charge and make some sentencing recommendations. The State avowed to ask the court to: sentence Davis to the mid-number in the appropriate sentencing guidelines box; follow the statutory presumption of prison; and order him to serve this sentence consecutive to all prior sentences. Jon Hansen was Davis' first court appointed defense counsel who was later replaced by Bradley Sylvester.

When the court held a plea hearing, Davis was present with Sylvester. The judge addressed Davis directly to explain the rights he would be waiving if he proceeded with a no contest plea:

> "[T]here are consequences to your decision to enter a plea of no contest. There will be no trial. You will be giving up all of your defenses. You will also be giving up your right to appeal this case, with the exception of the sentencing part of the case. As I said earlier, I will find you guilty based upon your plea."

Davis stated explicitly that he understood the rights he would be waiving. He told the district court that he read both the plea agreement and the acknowledgment of his rights and entry of plea, and he signed them both. Davis told the court that Sylvester explained the documents to him, he understood what the documents said and meant, and he had no questions. The district court told Davis that the jury was available and ready to go, but Davis conveyed he wanted to proceed with his plea. Davis also initialed the plea agreement in open court and on the record.

The State suggested that Davis' anticipated criminal history score was B. The district court informed Davis of the sentencing range for the crime of attempted

2

registration violation. Davis stated that range of possible sentences was consistent with his understanding. Davis denied that he was threatened or forced into entering the plea agreement. He denied that he used or consumed any substances that could alter his understanding of his rights, and he denied that he had any medical or physical problems in understanding his rights. Davis also stated that he was satisfied with Sylvester's services and he had sufficient time to speak with Sylvester about his options and the ramifications of entering a plea. Davis stated he still wanted to waive his rights and enter a plea.

The State provided the factual basis for the amended charge, which the district court found was adequate to support Davis' plea. The district court found Davis understood the charge against him and the consequences of entering a plea. The court also found that Davis knowingly and voluntarily waived his rights and entered his plea. After accepting Davis' plea, the district court found him guilty of the charge and, in accordance with the plea agreement, dismissed the remaining charge.

Three days before sentencing, Davis filed a document titled "SUPPLEMENTAL PLEADINGS TO PRO SE MOTION FOR FINDING K.S.A. 22-4905(g) & K.S.A. 22-4902(i) & (j) ARE CONSTITUTIONALLY INFIRM AND VOID-FOR-VAGUENESS IN VIOLATION OF DUE PROCESS." In this document, Davis challenged some aspects of KORA on the grammar and punctuation of statutory provisions and definitions pertinent to residency and employment. He claimed that the statutes were ambiguous, constitutionally infirm, and void for vagueness. On the last page of this document, Davis wrote: "WHEREFORE, the plea, conviction [and/or sentence] is constitutionally infirm and void (See Papachristan v. City of Jacksonville, 405 US 156 (1972); City of Chicago v. Morales, 527 US 41, 61 (1999)) and must be vacated and dismissed with prejudice and Davis released from all custody forthwith."

3

Later, at the sentencing hearing, Sylvester raised the topic of Davis' recent pro se motion:

> "I would also note for the court, my client filed his own *void for vagueness motion* in this case, *which I did not adopt*. I've litigated these things before and this is one of those curious situations where a person has a pro se argument, but then the courts have often said well, too bad, you've got an attorney. *So I haven't adopted that motion*, but *he wants to still preserve that issue for an appeal*.
>
> "So I'm not quite sure how to do that other than—I mean, I guess he could go pro se and raise the issue himself, but that would seem to be a needless waste of opportunity. So we're simply—maybe that's something the Court can look at . . . ." (Emphases added.)

The district court addressed Davis directly and told him that his motion was improper. The judge stated, "[I]f you have an attorney, Mr. Davis, all motions, all legal matters need to go through the attorney." The district judge stated that allowing represented defendants to file their own motions was actually a disservice to those defendants and that "[y]ou need to have one person calling the shots."

The judge also stated that allowing both represented defendants and their attorneys to file "their own stuff" would cause a quagmire in the judicial system. The judge refused to consider Davis' pro se supplemental motion:  "[M]y holding is if you're represented by an attorney, other than a request for a new attorney or relief of that attorney, all motions must go through that attorney. . . So I am going [to] deny it, in that it wasn't filed by the attorney." The district judge also stated that Davis' pro se motion had no merit as it showed a lack of understanding of the subject matter.

The district judge asked the parties if there was any legal cause to not move forward with sentencing. Both Sylvester and the State suggested there was not. The district judge then addressed Davis directly:

4

"THE COURT: Mr. Davis, any legal reason why we shouldn't go forward with sentencing right now?

"[DAVIS]: *None besides the motion that I did file pro se*, Your Honor, *about the vagueness*.

"THE COURT: Right. I've already—

"[DAVIS]: You've already made a ruling on that.

"THE COURT: I've already overruled on that. Okay. Well, there is a plea agreement . . . ." (Emphasis added.)

The district court heard recommendations from the parties, both of which argued that the court should follow the plea agreement. Again, the district court addressed Davis directly and asked if there was anything he wanted to say on his own behalf before sentencing. Davis indicated that he wanted to discuss his jail credit for the time he was confined before sentencing. Davis, the district judge, and Sylvester discussed the variables involved in calculating jail credit and noted the days Davis was confined would be reflected on the journal entry. The judge again asked Davis, "So anything, though, Mr. Davis, about the merits of this case before I do sentencing? Anything you wanted me to know?" Davis again addressed only his jail credit.

In accordance with the plea agreement, the district court sentenced Davis to 19 months with the Secretary of Corrections. The court informed Davis he was entitled to 20 percent good time and was subject to 12 months' postrelease supervision. The court ordered Davis' sentence to be served consecutive to 96CR2192. The court also ordered that Davis be given credit towards his sentence for the time he spent incarcerated here.

To us, Davis contends that the district court abused its discretion in failing to make findings of fact and conclusions of law to determine whether he established good cause to withdraw his plea. He asks us to remand his case with instructions for a hearing on his motion before an impartial judge. The State contends that the district court did not abuse its discretion for three reasons:

5

- Davis was represented by counsel and had no right to hybrid representation;
- Davis' pro se motion could not reasonably be interpreted by the district court as a motion to withdraw his plea; and
- Davis demonstrated no good cause to withdraw his plea.

*We review and apply the rules on legal representation.*

A defendant has a constitutional right of self-representation and may defend himself without counsel when he voluntarily and intelligently elects to do so. An indigent defendant also has a constitutional right to court-appointed counsel. But a defendant cannot simultaneously assert both rights. A defendant who accepts court-appointed counsel has no right to conduct his own trial or dictate the procedural course of his representation by counsel. *State v. Ames*, 222 Kan. 88, 99-100, 563 P.2d 1034 (1977).

Davis concedes this fact. There is no question Davis wanted appointed counsel. Even on appeal, he argues that the sentencing judge committed an error by constructively denying him counsel. The record, however, shows that Davis prepared many motions without the aid and assistance—and often without the knowledge—of his attorneys. He did not want to be bound by the decisions of counsel.

Despite that desire, we must point out that when a defendant chooses to have counsel, conduct of the defense's case rests with the attorney. The decisions on what witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions to make, and all other strategic and tactical decisions are the exclusive province of the attorney after consultation with his or her client. *Ames*, 222 Kan. at 100. The record on appeal shows that the district court's delineation of which motions were heard and which were not was clear and consistent. Each time Davis sent the district clerk a document to file, the clerk forwarded that document to the defense attorney of record. If the motions were filed by Davis' attorney, however, they were

6

scheduled for a hearing. If one of Davis' pro se motions was raised at a hearing, the court waited for defense counsel to determine whether he would adopt that motion. If defense counsel did not adopt the motion, it got no hearing. Davis was present in court with his attorney at each stage of the proceedings and would have heard the various district judges' comments and admonishments about hybrid representation. At the sentencing hearing, as had happened at other proceedings, Sylvester stated he did not adopt Davis' pro se motion and so the district court declined to hear it.

It is important to note that Davis concedes he did not request "hybrid representation," and raises the concept of "standby" counsel. The right of a defendant to participate in his or her defense if he or she is recognized as co-counsel is within the sound discretion of the district court. See *Ames*, 222 Kan. at 100-01; cf. *State v. Holmes*, 278 Kan. 603, 620-21, 102 P.3d 406 (2004). But a trial court is under no obligation to allow a defendant to act as co-counsel. See *State v. McKessor*, 246 Kan. 1, 11-12, 785 P.2d 1332 (1990). The record reveals that Davis did not request to act as co-counsel in his own defense and the district court did not make such a finding here.

Davis acknowledges that his right to proceed by himself is activated upon a waiver of his right to be represented by counsel. The record on appeal is clear that Davis did not request to waive his right to counsel, he did not request to proceed pro se at any stage of his case, and he did not request the district court designate him as co-counsel in his case.

Because Davis was not entitled to hybrid representation, we hold the district court's refusal to hear his pro se motion when he was represented by counsel demonstrates no anti-pro se litigant bias. Even if the district judge did possess a bias about pro se defendants, Davis was not a pro se defendant. Davis was represented by counsel throughout the proceedings. Because he was represented by counsel and Sylvester explicitly did not adopt Davis' motion at the sentencing hearing, the district court was under no obligation to consider the motion. See *Ames*, 222 Kan. at 100-01.

7

The record does not reveal that the sentencing judge held a bias against pro se defendants. In our view, the judge's comments at the sentencing hearing reveal the judge's desire for judicial economy coupled with a suggestion that defendants should rely on their attorneys. In that context, there is a proper and reasonable interpretation of the district judge's comments about pro se motions. Davis has failed to establish judicial bias or misconduct and we see no error on this point.

*Davis has not shown us that he had conflicts with his counsel.*

For the first time on appeal, Davis claims a conflict with his counsel. He contends that Sylvester was antagonistic towards him at sentencing. He cites two incidents. First, he noted that Sylvester did not adopt Davis' pro se motion. Instead, he suggested that Davis could proceed pro se on the motion to preserve the issue for appeal. Second, Sylvester made no sentence-mitigating argument on his behalf. Confronted with this, he contends the district court should have inquired if there was a conflict, and the court's failure to do so means he was constructively denied conflict-free counsel at a critical stage of the proceedings. The State argues that Davis was not constructively denied counsel.

To show that a conflict of interest resulted in ineffective assistance of counsel, a defendant has the burden of proving (1) the existence of an actual conflict of interest between the attorney and client; and (2) that the conflict adversely affected the adequacy of the attorney's representation. *State v. Cheatham*, 296 Kan. 417, 448, 292 P.3d 318 (2013). Davis has failed to meet this burden.

The court must act if it is told about a conflict between a defendant and defense counsel. When the district court is notified of a potential conflict of interest faced by a criminal defense attorney, the court must make an appropriate in-depth inquiry into the conflict. If an appropriate inquiry is made, the district court's decision to deny a motion to

8

withdraw counsel is reviewed under the abuse of discretion standard. *State v. Stovall*, 298 Kan. 362, 370, 372, 312 P.3d 1271 (2013). Failure to make an adequate inquiry when the court is aware of the potential conflict constitutes an abuse of discretion. *State v. Marshall*, 303 Kan. 438, 447, 362 P.3d 587 (2015); see *State v. Sharkey*, 299 Kan. 87, 100-01, 322 P.3d 325 (2014).

We do not see evidence of a conflict in this record. Instead, it reveals that Sylvester suggested that Davis could proceed pro se so that his motion could be heard in accordance with his wishes, and so the issues in the motion could be preserved for appeal. The record also shows that Sylvester argued the district court should follow the sentencing recommendations in the plea agreement, to which Davis had already agreed. And on the three occasions the district court explicitly inquired of Davis if there was any impediment to moving forward with sentencing, Davis replied, respectively, that there was "none" except for his motion for "vagueness," and then twice discussing his jail credit.

It is clear that Davis expressed no concerns about Sylvester's representation of him. He did not notify the district court, at any time, that he believed a conflict had developed between himself and Sylvester. Since the court was not put on notice that Davis believed there was a conflict, it cannot be faulted for not making an inquiry into any potential conflict. The district court did not constructively deny Davis conflict-free counsel.

Davis has neither met his burden to establish the existence of an actual conflict of interest between Sylvester and himself, nor established that any conflict adversely affected the adequacy of Sylvester's representation of him.

9

*We hold Davis' motion is not a motion to withdraw his plea.*

The motion in question is titled "SUPPLEMENTAL PLEADINGS TO PRO SE MOTION FOR FINDING K.S.A. 22-4905(g) & K.S.A. 22-4902 (i) & (j) ARE CONSTITUTIONALLY INFIRM AND VOID-FOR-VAGUENESS IN VIOLATION OF DUE PROCESS." It is 26 pages long. In the motion, Davis:

- argues that the statutes are ambiguous and void;
- addressed punctuation and grammatical construction within the statutes;
- dissected definitions of terms used in the statutes;
- discussed statutory interpretation and legislative intent;
- posited hypothetical situations related to residency and employment reporting; and
- generally argued that KORA is unconstitutional.

On the last page of the motion, Davis wrote, "WHEREFORE, the plea, conviction [and/or sentence] is constitutionally infirm . . . and must be vacated and dismissed with prejudice and Davis released from all custody forthwith."

If we give effect to the motion's content rather than the labels, we see that the motion is aligned with its title and headings: a challenge to the constitutionality of KORA. At no point in the document does Davis show a regret for entering his plea, let alone request to withdraw that plea or use some similar language that could reasonably signal to the district court that this is what he hoped to do. The purpose of the motion appears to be what it claims: an attempt to have the district court declare that KORA is unconstitutional. Even the most liberal interpretation of the document does not reasonably equate to a motion to withdraw Davis' plea.

10

We also note that at the sentencing hearing Sylvester and Davis shed light on the intent of the motion. Both referred to the motion as a "void for vagueness" motion and a "vagueness" motion. At no time during the sentencing hearing did Davis suggest he wanted to withdraw his plea. When given opportunities to speak before sentencing, Davis did not say he wanted to withdraw his plea or was having second thoughts. Instead, he asked about how his jail time would be calculated. In this context, the district court could not have reasonably been expected to construe Davis' motion as one to withdraw his plea.

Because Davis' presentence pro se motion could not reasonably be interpreted as a motion to withdraw his plea, we hold the district court did not err in failing to make findings of fact and conclusions of law pertinent to such a motion.

Even if we considered this a motion to withdraw his plea, Davis has not shown any good reason to do so. Generally, the *Edgar* factors guide a court's decision whether a defendant has demonstrated the good cause required by K.S.A. 2017 Supp. 22-3210(d)(1) to withdraw a plea prior to sentencing. Those factors are:

- whether the defendant was represented by competent counsel;
- whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
- whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Davis does not specify which of his claims in his pro se motion trigger any of the *Edgar* factors or other factors possibly relevant to establishing good cause to withdraw his plea. The motion does not claim Sylvester was incompetent in his representation of

11

Davis up to and including the plea hearing. The motion does not state that Davis was misled, coerced, mistreated, or unfairly taken advantage of. And the motion does not claim his plea was not fairly or understandingly made.

To the contrary, the record of the plea hearing reflects that Davis was satisfied with Sylvester's representation, and entered his plea fully understanding the terms and the consequences of his decision. An assessment of the pro se motion reveals that had the district court bypassed the issue of hybrid representation and then construed the motion as one to withdraw Davis' plea, the only factor the district court would have been able to articulate as a finding of fact was that Davis believed KORA was "void-for-vagueness" and thus unconstitutional. This is contrary to established law. See, e.g., *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016).

We find no error in the district court's ruling on this point.

Affirmed.